UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TARANGO D. PADILLA,<br><br>                Petitioner,<br><br>vs.<br><br>RANDY BLADES,<br><br>                Respondent. | Case No. 1:17-cv-00527-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Earlier in this matter, the Court granted Respondent Randy Blades' Motion for Partial Summary Dismissal of Petitioner Tarango D. Padilla's Petition for Writ of Habeas Corpus. (Dkts. 8, 12.) Petitioner is challenging his state court grand theft and persistent violator convictions. Petitioner was permitted to proceed to the merits of a subclaim contained in Claim Two, alleging Sixth Amendment ineffective assistance of counsel. Respondent has filed a Response and Brief in Support of Dismissal as to the remaining claim. (Dkt. 13.) Petitioner has elected not to file a reply.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006). Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented

the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## REVIEW OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

1. **Standard of Law**

Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies when a petitioner files a federal habeas corpus action to challenge a state court judgment. That section limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Where a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although it identified "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S 415, 426 (2014).

When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds as recognized in Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

If a federal district court concludes that the state reasonably found the facts and applied the correct federal legal precedent but nevertheless came to an incorrect

**MEMORANDUM DECISION AND ORDER - 3**

conclusion, habeas corpus relief is not necessarily warranted. Rather, the federal district court also must conclude that the state court decision is objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If fairminded jurists could disagree on the correctness of the state court's decision, then the decision is considered "objectively reasonable," and relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Stated differently, if *all* fairminded jurists would agree that the state court decision is incorrect, that equates to a finding that the decision is "objectively *un*reasonable." After any mandatory harmless error review, then habeas corpus relief can be granted. The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

*Strickland v. Washington*, 466 U.S. 668 (1984) is the clearly-established law governing Sixth Amendment claims of ineffective assistance of counsel. *Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Within an ineffective assistance of counsel claim, the Court also reviews the law governing the subject of the alleged deficient performance—here, Fourth Amendment search and seizure issues. The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. This protection extends to brief investigatory stops of persons that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).

   2. **State Court Decision**

Petitioner asserts that his trial counsel was ineffective in failing to move to suppress unconstitutionally-obtained evidence. The Court does not recite the complete history of Petitioner's case, which is included in Respondent's briefing, but focuses on that which is relevant. After the Idaho Court of Appeals affirmed denial of his post-conviction review petition, Petitioner's claim was heard anew by the Idaho Supreme Court.

That Court characterized the relevant facts as follows:

> On August 7, 2011, at about 2:00 a.m., Mr. Padilla was walking down an alley when a police car pulled up with its headlights off. The officer turned on the car's headlights and turned the vehicle so that Mr. Padilla could see that it was a clearly marked police car. After stopping the car, the officer began getting out, and Mr. Padilla turned and began running away. The officer shouted several times for Mr. Padilla to stop, but he kept running. The officer ran after him. Mr. Padilla ran between some houses and jumped over a fence, twisting his ankle when he landed and fell to the ground. As he lay in the bushes where he had fallen, he tossed everything that he did not want found on him into the bushes. Those items included a stolen credit card and pieces of a spark plug, which can be used to

break into vehicles. Another officer heard the first officer's radio call for assistance, and he located Mr. Padilla where he had fallen. He immediately handcuffed Mr. Padilla and patted him down for weapons, but did not feel anything that felt like a weapon. When the first officer arrived, he searched the area where Mr. Padilla had been and found a credit card issued to a Mr. Mauch, some money, and the pieces of the spark plug, which he knew from his training and experience could be used to break into vehicles. He observed that all of these items were clean and appeared to have been recently placed there. The officer then searched Mr. Padilla's person and found two other credit cards belonging to a Ms. Labrum and more pieces of a spark plug.

*Padilla v. State of Idaho*, 389 P.3d 169, 171 (Idaho 2016).

The state district court made the following findings of fact on post-conviction review, as cited in the Idaho Court of Appeals' opinion affirming denial of post-conviction relief:

> [T]he district court found the facts to be those as stated by the officer. In fact, Padilla's claims that he ran because he thought he was going to get jumped by someone and that he would have stopped had he known it was a police officer, were specifically found by the district court to not be credible. The district court explained that Padilla's testimony was "simply not credible" because his statement that he ran because he feared he would "get jumped" was "totally inconsistent" with his prior statement: "I was trying to make sure I didn't have nothing on me in case I got found. I mean, it wasn't—I had a misdemeanor warrant for a misdemeanor DUI at that time also, so I was panicking. I didn't want to pick up more charges because I thought I might have some weed on me." The district court's factual findings support at least the reasonable inference that Padilla knew police were present, and that police believed he was aware of their presence.

*Padilla v. State of Idaho*, No. 43292, 2016 WL 2746922, at *4 (Idaho Ct. App. May 12, 2016), *aff'd*, 389 P.3d 169 (2016).

Petitioner made three Fourth Amendment arguments to the Idaho Supreme Court. This Court will examine whether any argument provides grounds for habeas corpus relief.

### A. Seizure Argument

Petitioner first argues that police had no reasonable suspicion to begin chasing him for a purported investigative purpose, and, therefore, the evidence found near and on him should have been suppressed. The Idaho Supreme Court recognized the correct legal precedents for determining the moment when Petitioner was seized:

> A seizure does not occur until a person is either physically restrained by the police or yields to a show of authority and stops. *California v. Hodari D.*, 499 U.S. 621, 626–29 (1991). "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause*." United States v. Sokolow*, 490 U.S. 1, 7 (1989). Stated differently, the Supreme Court has acknowledged "the authority of the police to make a forcible stop of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983).

*Padilla*, 389 P.3d at 171-72.

Petitioner argues that the police did not have reasonable suspicion simply because he started running away. He proposed that the State had to prove that Petitioner knew the car was a police car and that the police believed that Petitioner was aware of their presence. The Idaho Supreme Court rejected that confining formulation and instead turned to *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), which requires consideration of the

"totality of the circumstances." Further, the Idaho Supreme Court quoted *Illinois v. Wardlow*, 528 U.S. 119 (2000), where the United States Supreme Court observed: "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.* at 124.

With this precedent in mind, the Idaho Supreme Court listed the circumstances that constituted "articulable facts that criminal activity 'may be afoot'"—a standard which does *not* have to equate with probable cause. *See Sokolow*, 490 U.S. at 7. Those fact included that Petitioner was walking down an alley at 2:00 a.m.; the officer purposely positioned his car when parking so that Petitioner could clearly see that it was a marked police car; and Petitioner did not just run down the alley or street, but ran between two houses and jumped over a fence. Additional facts in the record are that the officer observed Petitioner enter the alley, "shuffling" and "fumbling around," and the officer shouted several times for Petitioner to stop (which would have relieved Petitioner of his fear that the officer was a potential assailant), but he kept running. (State's Lodging A-3, p. 73.)

In *U.S. v. Cortez*, 449 U.S. 411 (1981), the Court instructed that the "totality of circumstances-the whole picture-must be taken into account" by the detaining officers who "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417. Based on the facts above and according to correct Fourth Amendment legal principles, the Idaho Supreme Court concluded that Petitioner was not seized while he was running from the police and, thus, the "totality of circumstances" and "investigative stop" principles applied. *Padilla*, 389 P.3d at 171-72.

While Petitioner continues to press his position that he is entitled to suppression of the evidence because he ran to safety only because he feared he was going to "get jumped" by an assailant, his subjective opinion is not the proper standard upon which to judge this issue. Petitioner's argument has been rejected multiple times by the United States Supreme Court. In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Court reasoned:

> Respondent and amici also argue that there are innocent reasons for flight from police and that, therefore, flight is not necessarily indicative of ongoing criminal activity. This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment. Even in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation. The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring. 392 U.S., at 5–6, 88 S.Ct. 1868. All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery. *Terry* recognized that the officers could detain the individuals to resolve the ambiguity. *Id*., at 30, 88 S.Ct. 1868.
> In allowing such detentions, *Terry* accepts the risk that officers may stop innocent people. Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent. The *Terry* stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way.

*Id*., pp. 125-26.

First, Petitioner has brought forward nothing that would cause this Court to question the fact-finding of the state district court that was adopted by the state appellate courts. Petitioner's facts are quite similar to those in *Wardlow* and *Terry*; thus, Petitioner is hard-pressed to show objective unreasonableness, let alone error, in the Idaho Supreme

Court's analysis of his first Fourth Amendment argument underlying the Sixth Amendment ineffective assistance claim.

### B. Submission to Police Authority Argument

Petitioner's second point of contention is that he believes the items he discarded while lying in the bushes should have been suppressed because he "submitted himself to police authority" when he decided to hide in the bushes after he had injured his ankle and before the police found him. Clearly-established law governing this point is found in *California v. Hodari D*., 499 U.S. 621 (1991), where Hodari, upon finding himself being pursued by a police officer, "tossed away what appeared to be a small rock," later identified as crack cocaine. The issue before the United States Supreme Court was whether, at the time he dropped the drugs, Hodari had been "seized" within the meaning of the Fourth Amendment. The Supreme Court held that a seizure requires *either* touching by the police officers *or* submission to authority by the suspect. *Id*., pp. 623-27.

The Idaho Supreme Court determined that the record in Petitioner's case does not support his assertion that he had submitted himself to authority of the officers and was seized before he discarded the items in the bushes, based on Petitioner's testimony:

> Q. Did you stop yourself or did the police stop you?
>
> A. I didn't stop 'cause my ankle, I was hurt, and I was laying in the bushes, and I believe it was then, 'cause I heard numerous other vehicles racing, vroom. A lot of commotion was happening like right then. I was like, oh, those officers, those cops.
>
> Q. They found you?

> A. Yeah, they eventually found me behind Fuller Law Office, right there behind the office.

*Padilla*, 389 P.3d at 172.

The Idaho Supreme Court rejected Petitioner's argument readily because he did not let the police know he was submitting to their authority. *Id.*, pp. 172-73. Rather, he was hiding from them, which would lead to the opposite conclusion of a passive but conscious decision to not submit to their authority. There is no unreasonableness apparent in this decision of the Idaho Supreme Court.

### C. "But For" Argument

Petitioner's third alternative argument was that the discarded items should be suppressed, because police officers would not have found them *but for* their unconstitutional seizure of him. Rejecting this argument, the Idaho Supreme Court stated, "As discussed above his seizure was not unconstitutional, and the items were just lying on the ground where they could be found without seizing him." Padilla, 389 P.3d at 173. This is sound reasoning based on the foregoing discussion and does not require further comment.

### 3. Whether Counsel was Ineffective

Wrapping the Fourth Amendment analysis into the Sixth Amendment ineffective assistance of counsel determination, the Idaho Supreme Court determined that a motion to suppress the evidence found at the scene and on Petitioner's person would not have been successful because the evidence presented at the hearing showed that Petitioner's

search and seizure were within constitutional bounds. Accordingly, the Idaho Supreme Court concluded, there was no ineffective assistance of counsel in failing to file a motion to suppress.

To prevail on his claim in habeas corpus, Petitioner must show that the Idaho Supreme Court applied the foregoing precedent in an objectively unreasonable manner. Stated another way, he "must show that the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Richter*, 562 U.S. at 103.

As discussed in detail above, the Idaho Supreme Court's opinion tracks governing precedent and is reasonable and sound based on the facts and circumstances of the case. There is nothing in the record supporting a conclusion that all reasonable jurists would conclude that the decision is objectively unreasonable, or even erroneous. This Court concludes that the claim fails either under AEDPA's doubly-deferential review or plain de novo review for lack of supporting facts to support Petitioner's claims that his Fourth or Sixth Amendment rights were violated. Accordingly, the Petition for Writ of Habeas Corpus will be denied and dismissed in its entirety.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: November 14, 2019

B. Lynn Winmill
U.S. District Court Judge